■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN MADERIC, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Fulton County (Best, J.), rendered August 4, 1987, upon a verdict convicting defendant of the crime of attempted criminal sale of a controlled substance in the third degree.

After having agreed to serve as a police informant in Fulton County, Kenneth Chamberlain, without consulting law enforcement officials, traded seven ounces of home-grown marihuana to defendant for a substance represented as opium, a controlled substance (see, Public Health Law § 3306, schedule II [b] [1]). The next day, December 27, 1986, Chamberlain informed police that he had arranged a possible purchase of narcotics from defendant. The police strip-searched Chamberlain, attached a body wire to him, and gave him $50 with which to consummate the sale. Unable to find defendant at home, Chamberlain enlisted the assistance of Donald Christman, an acquaintance, and the two of them subsequently located defendant in the apartment of Brenda Carpenter, defendant's friend. There Chamberlain purchased from defendant for $50 one quarter of an ounce of substance represented by defendant as "opium", "opium base" and "opium oil". Tests later revealed that, in fact, it contained no controlled substances.

Defendant was indicted for attempted criminal sale of a controlled substance in the third degree, a felony, and petit larceny, a misdemeanor. The prosecution offered to permit defendant to plead guilty to the petit larceny charge in satisfaction of both counts. Because defendant was a predicate felon, County Court refused to accept this plea bargain, maintaining that any negotiated plea had to include a plea of guilty of a felony *(see,* CPL 220.10 [5] [c]). A subsequent offer to plead guilty to the felony charge was rejected by defendant. At trial, following an audibility hearing, an audio tape of the conversation between Chamberlain, Christman and defendant was introduced into evidence. A jury convicted defendant on the felony charge and he was sentenced to an indeterminate prison term of 3 to 6 years. Defendant appeals; we affirm.

Defendant contends that since the counts are mutually exclusive and because a District Attorney might decide that only the misdemeanor could realistically be proven, it is therefore fundamentally unfair for County Court to refuse a negotiated plea to the misdemeanor simply because defendant is a predicate felon. However, the statute at issue (CPL 220.10 [5] [c]) is a legislative restriction on prosecutorial discretion *(see, People v Miller,* 126 AD2d 868, 869, *lv denied* 69 NY2d 884). Its aim is unambiguous. If defendant does not plead guilty to the charged felony he may be required to stand trial for it regardless of whether he or the District Attorney thinks defendant is guilty of an inconsistent misdemeanor or is altogether innocent. In any event, the courts are constrained to apply the statute as it exists *(see, People v Cook,* 93 AD2d 942) and any perceived deficiencies in it short of constitutional flaws must be remedied by the Legislature.

The challenge to the admissibility of the tape-recorded conversation, both for lack of foundation and for inaudibility, is unconvincing. A foundation for the tape's admission was established by the police officer who monitored and recorded the conversation and by Christman, a witness to the conversation. The police officer testified that he played the tape following the conversation and that it was the same. Christman identified the voices on the tape, including that of defendant, and acknowledged that it was a tape of what happened while he was present. That a sufficient foundation was laid for the tape's admission is apparent *(see, People v Ely,* 68 NY2d 520, 527). Furthermore, Chamberlain testified subsequent to its admission that the tape fairly and accurately represented the conversation.

Belatedly defendant complains that County Court unduly

interjected itself by asking questions of witnesses to establish a foundation for the tape's admissibility. However, we read the court's brief questioning as serving only to clarify points regarding foundation and thereby expediting the trial (see, *People v Yut Wai Tom*, 53 NY2d 44, 57) and not as eliciting crucial testimony (cf., *People v Tucker*, 89 AD2d 153, 154-155) or as signaling to the jury the court's disposition regarding the witness or the case (see, *People v Moulton*, 43 NY2d 944, 945). Nor do we find that County Court abused its discretion in determining that the tape is audible (see, *People v Warner*, 126 AD2d 788, *lv denied* 69 NY2d 887). The brief inaudible portions of the tape do not render the conversation unintelligible or encourage speculation about its contents (cf., *People v Beasley*, 98 AD2d 946, *affd on mem below* 62 NY2d 767).

Defendant also argues that the prosecution's questions of Christman and the police officer improperly bolstered its case. Although identification of voices on the tape was often achieved by asking Christman to identify a voice he heard on the tape, after which Christman would relate what was said, the prosecutor was also allowed to preface his questions with phrases similar to "Do you recognize the voice that says" so long as the statement that followed did not differ from what the court heard, e.g., "Do you recognize the voice that responded to, 'I have been looking for you John'?". Defendant does not contend that the People misinterpreted what was said on the tape, nor do we find any significant deviation. In our view, compared to the tape, the prosecutor's questions provided negligible enhancement, if any, of Christman's testimony.

As to the police officer who monitored the recording of the tape, he was asked and allowed to relate that he heard Chamberlain and Christman conversing, that they found "John" and discussed opium. This testimony, offered for the nonhearsay purpose of establishing a foundation for the audio tape (see, *People v Torres*, 118 AD2d 821, 822, *lv denied* 68 NY2d 672), though it was later rendered irrelevant, did not, in any event, amount to impermissible bolstering (cf., *People v Trowbridge*, 305 NY 471, 475).

Finally, viewing the evidence in the light most favorable to the People (see, *People v Morgan*, 66 NY2d 255, 256, *cert denied* 476 US 1120), it is abundantly clear that defendant's guilt was proven beyond a reasonable doubt. Carpenter's testimony that defendant told her prior to the subject transaction with Chamberlain that the substance in question was opium incense, a noncontrolled substance, which he had

shaped in a cone and burned in an ashtray, as well as the testimony that opium incense is sometimes referred to on the streets as opium, considered in contrast to testimony of previous transactions between Chamberlain or Christman and defendant involving narcotics and several involving the supposed opium and the elements of the taped transaction, raise only competing inferences which are best resolved by the jury (see, People v Barnes, 50 NY2d 375, 381).

We have examined defendant's remaining contentions and find them lacking in merit.

Judgment affirmed. Mahoney, P. J., Kane, Weiss, Yesawich, Jr., and Mercure, JJ. concur.